# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| VARTEK, LLC, | ) |
| | ) Civil Action No. 2:18-cv-01455 |
| Plaintiff, | ) |
| | ) |
| vs. | ) Magistrate Judge Lisa Pupo Lenihan |
| | ) |
| AXIALL, LLC, | ) |
| | ) ECF No. 26 |
| | ) |
| Defendant. | ) |

## **OPINION**

Presently before the Court is Defendant's Motion to Dismiss Count III of Plaintiff's Complaint. ECF No. 26. For the reasons set forth below, the Court will grant the Motion.

## I.    Relevant Facts

This case involves a claim of breach of implied warranty of fitness. Plaintiff, Vartek, LLC ("Vartek"), manufactures PVC hose and tubing. Compl. ¶ 9, ECF No. 1.  Vartek purchased PVC pellets from Defendant, Axiall, LLC ("Axiall"), pursuant to a Supply Agreement ("Agreement") dated February 1, 2014. *Id.* at ¶ 19.

In or about February 2014, Axiall began supplying Vartek with PVC pellets to manufacture its hosing and tubing. *Id.* at ¶¶ 20, 22. The tubing reacted with spa water and caused the water to discolor, abnormally foam, and produce white waxy flakes of contamination. *Id.* at ¶ 25. In or about April 2015, Vartek contacted Axiall regarding the contamination and Axiall stated that the contamination was due to an external source. *Id.* at ¶¶ 26-27. Therefore, Vartek continued to use the PVC pellets provided by Axiall and the contamination continued. Vartek attempted to resolve the contamination problem for months but ultimately switched to another supplier. *Id.* at ¶ 32. Thereafter, Vartek stopped receiving complaints about water quality. Due to

the defective PVC hose and tubing, Vartek has been subject to lawsuits and claims from its customers. *Id.* at ¶ 34.

Plaintiff filed a Complaint on October 30, 2018 for (1) breach of contract, (2) breach of implied warranty, and (3) breach of implied warranty of fitness. ECF No. 1. Defendant filed a Motion to Dismiss Count III of the Complaint and a supporting brief on January 3, 2019. ECF Nos. 26-27. Defendant argues that pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, Plaintiff failed to state a claim for breach of any implied warranty of fitness upon which relief can be granted because the Agreement expressly provided that all implied warranties, including the implied warranty of fitness, are disclaimed by Defendant. Def.'s Mot. to Dismiss ¶ 4, ECF No. 26.

## II. Legal Standard

The United States Court of Appeals for the Third Circuit has aptly summarized the standard to be applied in deciding motions to dismiss filed pursuant to Rule 12(b)(6):

> Under the "notice pleading" standard embodied in Rule 8 of the Federal Rules of Civil Procedure, a plaintiff must come forward with "a short and plain statement of the claim showing that the pleader is entitled to relief." As explicated in *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), a claimant must state a "plausible" claim for relief, and "[a] claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Although "[f]actual allegations must be enough to raise a right to relief above the speculative level," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007), a plaintiff "need only put forth allegations that raise a reasonable expectation that discovery will reveal evidence of the necessary element." *Fowler*, 578 F.3d at 213 (quotation marks and citations omitted); *see also Covington v. Int'l Ass'n of Approved Basketball Officials*, 710 F.3d 114, 117–18 (3d Cir.2013).

*Thompson v. Real Estate Mortg. Network*, 748 F.3d 142, 147 (3d Cir. 2014).

Courts generally consider only the allegations of the complaint, attached exhibits, and matters of public record in deciding motions to dismiss. *Pension Benefit Guar. Corp. v. White*

*Consol*. *Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) (citations omitted). Factual allegations within documents described or identified in the complaint may also be considered if the plaintiff's claims are based upon those documents. *Id*. A district court may consider these documents without converting a motion to dismiss into a motion for summary judgment. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997).

### III. Analysis

#### A. Conspicuousness

In support of its Motion to Dismiss, Axiall argues Vartek failed to state a claim of breach of implied warranty of fitness upon which relief can be granted in Count III of the Complaint. Specifically, Axiall argues that the Court should dismiss Plaintiff's claim for breach of implied warranty of fitness because the claim was expressly disclaimed in the parties' Agreement and the disclaimer was conspicuous. Vartek counters that it sufficiently stated a claim and is entitled to relief because the disclaimer was not conspicuous. Therefore, the warranty cannot be disclaimed.

Disclaimers of implied warranty are governed by Pennsylvania's version of Article 2 of the Uniform Commercial Code ("the U.C.C."). *Great N. Ins. Co. v. ADT Sec. Servs.,* 517 F. Supp. 2d 723 n.23 (W.D. Pa. 2007). 13 PA. CONS. STAT. § 2316(b) states:

> (b) **Implied warranties of merchantability and fitness.** —Subject to subsection (c), to exclude or modify the implied warranty of merchantability or any part of it the language must mention merchantability and in case of a writing must be conspicuous, and to exclude or modify any implied warranty of fitness the exclusion must be by a writing and conspicuous. Language to exclude all implied warranties of fitness is sufficient if it states, for example, that "There are no warranties which extend beyond the description of the face thereof."

The Uniform Commercial Code defines conspicuous as:

> (10) "Conspicuous." With reference to a term, means so written, displayed or presented that a reasonable person against which it is to operate ought to have noticed it. Whether a term is "conspicuous" or not is a decision for the court. Conspicuous terms include the following:

> (i) A heading in capitals equal to or greater in size than the surrounding text, or in contrasting type, font or color to the surrounding text of the same or lesser size.
>
> (ii) Language in the body of a record or display in larger type than the surrounding text, in contrasting type, font or color to the surrounding text of the same size, or set off from surrounding text of the same size by symbols or other marks that call attention to the language.

13 PA. CONS. STAT. § 1201(b)(10).

In applying sections 2316(b) and 1201(b)(1) courts examine the following factors to determine if a reasonable person should have noticed a warranty disclaimer including: "1) the disclaimer's placement in the document, 2) the size of the disclaimer's print, and 3) whether the disclaimer was highlighted by being printed in all capital letters or in a type, style, or color different from the remainder of the document." *Borden Inc. v. Advent Ink Co.,* 701 A.2d 255, 264 (Pa. Super Ct. 1997).

Defendant claims that the terms in the Agreement are conspicuous because both the heading and the text of the disclaimer appeared in all capital letters, satisfying the requirements of section 1201(b)(10(i) ("A heading in capitals equal to or greater in size than the surrounding text...") and (ii) ("Language in the body of a record or display in... contrasting type..."). Additionally, Defendant argues that the warranty disclaimer complies with the factors established in *Borden Inc. v. Advent Ink Co.* 701 A.2d at 264. The General Terms document is only two pages long and the disclaimer is the only language that appears in all capital letters. Therefore, Defendant claims that a reasonable person would have noticed the warranty disclaimer.

In response, Plaintiff claims that its breach of implied warranty of fitness claim should not be dismissed because the Agreement is not conspicuous. The disclaimer does not appear on the face of the contract, is printed in tiny font that is not offset from the surrounding text and is otherwise completely unremarkable among the two pages of General Terms. Plaintiff argues that

while the disclaimer is in capital letters, the font is so small that the capitalization does nothing to distinguish it from the surrounding text.

Plaintiff analogizes the Agreement to the purchase agreement in *Moscatiello v. Pittsburgh Contractors Equip. Co,* where the Court found the warranty disclaimer to be inconspicuous. 595 A.2d 1190, 1194 (Pa. Super. Ct. 1991). The warranty agreement did not appear on the face of the purchase order. Instead, the bottom of the purchase order stated, "TERMS AND CONDITIONS ON REVERSE SIDE ARE AN INTEGRAL PART OF THIS ORDER." *Id.* at 1193. The *Moscatiello* Court noted that the Terms and Conditions of the purchase order contained extremely small type, approximately one-sixteenth of an inch in height, that filled the entire eighteen paragraph page. *Id.* The warranty disclaimer was buried at the bottom of the page. *Id.* Although the disclaimer was in capital letters, the lettering was so small that it did not attract attention to the clause. *Id.* 1193-94.

Plaintiff further relies on *Borden Inc. v. Advent Ink Co.* 701 A.2d 255 (Pa. Super. Ct. 1997). The *Borden* Court held that a warranty disclaimer on the back of an invoice was inconspicuous. The Court focused on the font size, approximately one-sixteenth of an inch, and that there was nothing to indicate the warranty disclaimer was more significant than other paragraphs. *Id.* at 261.

Based on these cases, Plaintiff claims that Defendant's disclaimer is not conspicuous. The reference to General Terms on the face of the contract would not put a reasonable person on notice that important warranty exclusions might appear in those terms. The font size utilized by Defendant was one-sixteenth of an inch, the same font size utilized in *Moscatiello* and *Borden*. Although the disclaimer does appear in capital letters, so do the next six lines of text, so it does not draw attention to the disclaimer. Therefore, Plaintiff asserts that Defendant's Motion to Dismiss should be denied.

The Court finds that the disclaimer in the parties' Agreement is conspicuous. The disclaimer does not appear on the face of the Agreement; however, directly above the signature line and in bold capital letters the Agreement states, "**THE ATTACHED GENERAL TERMS AND THE ADDENDA IS AN INTEGRAL PART OF THIS AGREEMENT AS IF RECITED AT LENGTH OVER THE SIGNATURES HERETO AFFIXED.**" Affixed to the Agreement is a two-page General Terms document containing 25 numbered paragraphs in one-sixteenth inch font. The first page contains twelve numbered paragraphs and the disclaimer appears at the bottom of the page in paragraph twelve. In bold capital letters the header reads "**WARRANTY AND LIMITATION OF REMEDY**" and the subsequent lines addressing the disclaimer are in capital letters. The disclaimer is the only capitalized section of the General Terms document.

Plaintiff presents two main arguments as to why the disclaimer is inconspicuous. First, the disclaimer does not appear on the face of the Agreement. Second, the disclaimer is written in one-sixteenth inch font size – a size that both the *Moscatiello* and *Borden* Courts previously took issue with. However, the disclaimers in *Moscatiello* and *Borden* can be distinguished from the disclaimer in the current Agreement.

The fact that the disclaimer does not appear on the face of the Supply Agreement does not carry as much weight as Plaintiff gives it. The *Moscatiello* Court stated that "the location of a disclaimer on the reverse side of a contract alone does not render the disclaimer inconspicuous." 595 A.2d at 1194. In addition to a conspicuous disclaimer, the face of the document must contain noticeable reference to the terms on the reverse side. *Id.* The *Moscatiello* Court held that the face of the purchase agreement containing the language "TERMS AND CONDITIONS ON REVERSE SIDE ARE INTEGRAL PART OF THIS ORDER" was inconspicuous because it only mentioned

terms and conditions rather than a limitation on warranties. *Id.* Here, although the Agreement contains a similar statement, its location directly above the signature line adds to its conspicuous nature. *See Jordan v. Four Winds International, Inc.* No. 108-CV-129, 2010 WL 1337691, at *9. The Court in *Jordan* found that reference to additional terms of an agreement directly above the signature line with language requiring the purchaser to certify that he or she read the back of the agreement along with other factors puts a reasonable person on notice to read all terms and conditions. *Id.*

Plaintiff analogizes the current Agreement to *Moscatiello* and *Borden* because all three disclaimers appear in one-sixteenth inch font. However, font size is only one factor in determining whether an agreement is conspicuous and is not outcome determinative. For example, the *Borden* Court stated that *even more important* than font size was the language on the front of the invoice that simply stated, "SEE REVERSE SIDE." 701 A. 2d 255 at 261. Additionally, the *Borden* Court took issue with the fact that all of the type was bold-faced and reasoned that there was nothing to indicate that the disclaimer paragraph was any more significant than the other provisions. *Id.* Unlike the disclaimer in *Borden,* the current disclaimer is the only capitalized provision within the General Terms. *See also Thermo King Corp. v. Strick Corp.* 467 F. Supp. 75,78 (W.D. Pa. 1979) (found the disclaimer warranty conspicuous because no other language in the warranty appeared in all capital letters).

The fact that the disclaimer only appears in capitalized letters and not boldface text does not make the disclaimer inconspicuous. Courts require that disclaimers are "highlighted by being printed in all capital letters *or* in a type, style, or color different from the remainder of the document." *Borden,* 701 A.2d at 264. Therefore, courts have created an option between capitalized text and other styles that draw attention to that section of the document. The current disclaimer

satisfies this requirement. "Courts in this circuit have routinely held that disclaimers in boldface type, unlike the surrounding provisions of the agreements in which they are located, are sufficiently 'conspicuous' to disclaim implied warranties." *IMAX Corp. v. Capital Ctr.,* 156 F. Supp. 3d 569, 578–79 (M.D. Pa. 2016). *See, e.g., Mack Trucks, Inc. v. BorgWarner Turbo Sys., Inc.*, Civ. No. 08–cv–2621, 2011 WL 1045108, *7 (E.D. Pa. Mar. 22, 2011) (found disclaimer of implied warranties in boldface text conspicuous); *Hornberger v. Gen. Motors Corp.*, 929 F.Supp. 884, 889 (E.D. Pa.1996) (found disclaimer conspicuous where the disclaimer was in boldface type and the surrounding text was not).

For the reasons set forth above, the Court finds that the disclaimer present in the Agreement is conspicuous and Defendant's Motion to Dismiss Count III of the Complaint will be granted. [1]

## IV.   CONCLUSION

For the reasons set forth above, the Court will grant the Motion to Dismiss Count III.

A separate order will follow.

Dated: March 22, 2019                                         BY THE COURT:

                                                              _____
                                                              LISA PUPO LENIHAN
                                                              United States Magistrate Judge

---

[1] Defendant also argues that a party's sophistication is a factor in determining if a disclaimer is conspicuous, relying on *Moscatiello v. Pittsburgh Contractors Equip. Co,* 595 A.2d 1190, 1194 (Pa. Super. Ct. 1991) and *Valhal Corp. v. Sullivan Associates Inc.* 44 F. 3d 195, 203 (3d Cir. 1995). The Court agrees with Plaintiff that these cases do not consider sophistication of the parties when determining conspicuousness. The sophistication factor only came into play in looking at damage calculations, *Moscatiello* at 1194, or unconscionability, *Valhal* at 203. *See also American Leistritz Extruder Corp. v. Polymer Concentrations, Inc.* 363 Fed. Appx. 963 (3d Cir. 2010) ("The unconscionability analysis focuses on the relative bargaining power of the parties..."); *Carter v. Exxon Co. USA, a Div. of Exxon Corp.,* 177 F. 3d 197, 207 (3d Cir. 1999) ("In determining whether a party is unconscionable courts focus bargaining power of the parties."). The Court found no cases that discussed party sophistication in the conspicuousness analysis.